**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
PHILLIP SULLIVAN, JR.,              :
                                     :
          Plaintiff,         :
                                     :     Case No. 1:19-cv-00719 (GHW)
                                     :
                                     :
        - against -       :
                                     :
DOCTOR'S ASSOCIATES LLC,    :
GEETA FASTFOOD ENTERPRISE INC.,  :
and ABHIMANUE MANCHANDA,    :
              Defendants.    :
--------------------------------------------------------x

 

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
DOCTOR'S ASSOCIATES LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS
ACTION COMPLAINT</u>**

(Served Upon Defendant on July 12, 2019)

 

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................................. 1

II.  STANDARD OF REVIEW .................................................................................................. 4

III. ARGUMENT ....................................................................................................................... 6

   A.  ANY PERSONS OR ENTITIES THAT HAVE ACTUAL AUTHORITY TO MAKE REASONABLE MODIFICATIONS IN POLICIES, PRACTICES, OR PROCEDURES ARE LIABLE UNDER THE ADA. ................................................................................................. 6

   B.  EVEN IF THE ADA WAS LIMITED AS DAL SUGGESTS, DAL IS STILL LIABLE BECAUSE IT OPERATES  ALL SUBWAY RESTAURANTS. ............................................. 11

     1.  DAL Operates All Subway Restaurants Through Its "Operations Manual" And Mandatory Training Program ............................................................................................ 11

     2.  DAL Has Absolute Authority To Enforce And Modify The Business's Policy, Practice And Procedure, Including ADA Policy And Employee Training Protocol, Under The Franchise Agreement. ....................................................................................................... 12

     3.  While DAL Selectively Exercised Its Authority To Enforce And Amend The Policy, Practices And Procedure, It Failed To Enforce And Amend The Policy, Practices And Procedure With Regards To ADA Compliance And Employee Training ............................. 12

     4.  As reflected in the sample Evaluation Report prepared by DAL's Local Field Consultant, DAL operates each Subway restaurants by closely supervising all aspects of the restaurants' operation and management. ................................................................................................. 14

IV. CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662.............................................................................................. 5

*Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427 (S.D.N.Y. 2005) ...................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544................................................................................... 5

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)............................................ 5

*Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993) .............................................. 6

*In re Facebook, Inc.*, 986 F. Supp. 2d 487................................................................................ 5

*In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498 ............................................................ 5

*Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538 ...................................................... 5

*Jeffrey Farkas M.D., LLC v. Grp. Health, Inc.*, 2019 U.S. Dist. LEXIS 17756........................... 5

*Johnson v. Winchester Campbell Props., LLC*, No. 18-cv-04153-VKD ..................................... 4

*Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002).................................................................. 5

*Mione v. McGrath*, 435 F. Supp. 2d 266 (S.D.N.Y. 2006)......................................................... 5

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)................................................................. 5

Regulations

42 U.S.C. §12181(b)(2)(D)(I) ...................................................................................................... 2

42 U.S.C. §12182................................................................................................... 2, 3, 6, 11

42 U.S.C. §12182(a) ................................................................................................................. 2

42 U.S.C. §12182(b) .............................................................................................................. 2, 3

CLS Civ R §40-c(2) .................................................................................................................. 3

N.Y. Exec. Law § 296(2)(a)........................................................................................................ 3

N.Y. Exec. Law § 296(2)(c)(II) .................................................................................................. 3

N.Y. Exec. Law §296(2)(c)(I)..................................................................................................... 3

N.Y.C. Admin. Code § 8-107(15)(a) .......................................................................................... 3

N.Y.C. Admin. Code § 8-107(4)(a) ............................................................................................. 3

## I.        PRELIMINARY STATEMENT

The issue presented in DAL's instant motion is whether DAL should be held liable for one of its Subway restaurants' ADA violations under the ADA.

DAL argues that it bears no liability under the ADA as it did not operate the East Village Subway restaurant. As a matter of fact, according to the Franchise Agreement, annexed as **Exhibit A** to Declaration of C.K. Lee, Esq., DAL actually has the authority to modify accessibility to the disabled for all franchisees and make it in compliance with the ADA, see *Id.*, at Section 5a(iii).

Plaintiff argues that both the franchisor and franchisees should be held accountable and liable for ADA violations, as this position is in line with a proper interpretation of the ADA, as well as the remedial purposes of the ADA and public policy. There is a split of opinions among circuit courts on the statutory interpretation of the relevant ADA provisions, and there are no decisions made by the Second Circuit. As such, Plaintiff argues that this Court should adopt the holding under United States v. Days Inns of America, Inc. 151 F.3d 822 (8th Cir. 1998), which established a "significant degree of control test" which allows for people other than owners, operators, lessees, and lessors to be found liable under ADA.

DAL is the franchisor of Subway restaurants. Subway is a fast-food restaurant chain that primarily sells submarine sandwiches. It "is the largest fast-food company in the world by store count, with more than 24,000 restaurants in the United States alone.[1] Subway is also the largest franchise, single-brand restaurant chain, and restaurant operator in the world. Compl. ¶9. Defendant Geeta Fastfood is the franchisee and business entity which holds the current license to operate the

---

[1]  Tiffany Hsu and Rachel Abrams, "Subway Got Too Big. Franchisees Paid A Price," NEW YORK          TIMES,          June          30,          2019,          *available          at* https://www.nytimes.com/2019/06/28/business/subway-franchisees.html. Annexed as **Exhibit E** in Declaration of C.K. Lee, Esq.

Subway restaurant.

This case arises out of Defendants' policy and practice of denying deaf and hard-of-hearing individuals throughout the United States equal access to the goods and services they provide to non-disabled individuals through their failure to properly train Subway restaurant staff members on the communication needs and rights of deaf or hard-of-hearing individuals or provide readily available technological aids to the hearing impaired to allow them to place orders at Subway restaurants. Plaintiff communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. Compl. ¶1. On September 20, 2018, Plaintiff personally visited a Subway Restaurant located at 223 Avenue B, New York, NY 10009 (the "East Village Restaurant"). Compl. ¶14. While Plaintiff was trying to order a steak sandwich by pointing to the food on the counter and used hand gestures to indicate that he wanted a steak sandwich, a staff of the restaurant used angry hand gestures and aggressive body language when communicating with Plaintiff, and forcefully smashing the sandwich flat on the counter. Plaintiff's order was not processed, and no other Restaurant employee communicated with Plaintiff, leaving Plaintiff feeling humiliated, frustrated, and helpless. Compl. ¶¶15-19.

Title III of the ADA condemns as unlawful discrimination an entity's utilization of any practice or policy which has the effect of depriving disabled individuals of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations the entity provides to non-disabled individuals. 42 U.S.C. §12182(a); 42 U.S.C. §12182(b)(1)(A)(I). Such prohibition includes the implementation of criteria or means of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. §12181(b)(2)(D)(I). Under Title III, NYSHRL, NYSCRL, and NYCHRL, unlawful discrimination also occurs when a person who is deaf or hard-of-hearing is directly or indirectly denied the opportunity to participate in programs or services, or

when the program or service provided to such individuals is of inferior quality to that which is provided to non-disabled individuals. 42 U.S.C. §12182(b)(1)(A)(I-III); N.Y. Exec. Law §296(2)(a); CLS Civ R §40-c(2); N.Y.C. Admin. Code § 8-107(4)(a). This includes the failure to provide the hearing impaired with auxiliary aids and services so that such individuals are able to fully access and meaningfully participate in an entity's programs, benefits, or services. 42 U.S.C. §12182(b)(1)(A)(III); N.Y. Exec. Law § 296(2)(a).

Title III, NYSHRL, and NYCHRL specifically contemplate unlawful discrimination when an entity "fail[s] to make reasonable modifications in policies, practices, or procedures…when such modifications are necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations…or [impose] an undue burden." 42 U.S.C. §12182(b)(2)(A)(II); 42 U.S.C. §12182(b)(2)(A)(III); N.Y. Exec. Law §296(2)(c)(I); N.Y. Exec. Law § 296(2)(c)(II); N.Y.C. Admin. Code § 8-107(15)(a).

DAL is controlling and having responsibility for all Subway restaurants' compliance, adherence to laws, franchisee training, the way franchise owners conduct their business, and setting Employment Practices and Code of Conduct policy for all its franchisees. DAL failed to fulfill its responsibility to set anti-harassment and anti-discrimination policies within its Employment Practices and/or Code of Conduct policies. Section 5a(iii) of the franchise agreement provides, "[t]he Restaurant will be at a location [] **approved by [DAL] with consideration given to the requirements of the Americans with Disabilities Act ('ADA').**" Section 5b(i) of the franchise agreement provides, "[Defendant ABHIMANUE MANCHANDA] will operate [the] business in

3

compliance with all existing and future applicable laws [.]" Section 8, Termination and Expiration Provisions, provides in relevant part, DAL can terminate the franchise agreement if "[Defendant ABHIMANUE MANCHANDA] fail[s] to comply with all civil and criminal laws, ordinances, rules, regulations and orders of public authorities[.]"

Reading the above three provisions as a whole, DAL has control over the East Village Subway restaurant's anti-discrimination employee training and ADA compliance. DAL approves the East Village Subway restaurant's location with a particular consideration given to the restaurant's ADA compliance. DAL could disapprove Defendant ABHIMANUE MANCHANDA's construction and design of the restaurant. Furthermore, DAL could apply the termination provision to close the East Village Subway restaurant on the ground that the restaurant lacks proper anti-discrimination employee training and fails to comply with the ADA. Instead, DAL, failed to exercise its control over the East Village Subway restaurant's ADA compliance. As a result of its failure to provide adequate anti-harassment, discrimination, and ADA compliance training to its franchisees and franchise owners, DAL caused Plaintiff to suffer substantial harm and discrimination while attempting to order a steak sandwich at the Subway restaurant on September 20, 2018. DAL is liable as a franchisor under Title III of the ADA.

Whether a particular franchisor may be held liable under the ADA is a question of fact, not law. A franchisor's liability under Title III of the ADA depends, at least in part, on the franchise agreement at issue and whether it gives Defendant the requisite control over the access-related aspects of the restaurant. *See Johnson v. Winchester Campbell Props., LLC*, No. 18-cv-04153-VKD, 2018 U.S. Dist. LEXIS 213064, at *10 (N.D. Cal. Dec. 18, 2018).

## II.  STANDARD OF REVIEW

"A complaint will survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as long

4

as it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its own face.'" *Jeffrey Farkas M.D., LLC v. Grp. Health, Inc.*, 2019 U.S. Dist. LEXIS 17756, at 8 (S.D.N.Y. Feb. 1, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "Courts 'accept as true all well-pleaded factual allegations.'" *Id.* (quoting *Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538, 541 (S.D.N.Y. 2016)). "This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." *In re Facebook, Inc.*, 986 F. Supp. 2d 487 (S.D.N.Y. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The Court may grant a motion to dismiss under Rule 12(b)(6) only if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of his claim which would entitle him to relief.'" *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498 (S.D.N.Y. 2004) (quoting *Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002)).

"In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." *Mione v. McGrath*, 435 F. Supp. 2d 266 (S.D.N.Y. 2006). Courts may consider "'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" *Id.* (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). "Where a document is not incorporated by reference, the court may nevertheless [sic] consider it where the complaint "relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," so long as there is no disagreement as to its authenticity, accuracy or its relevance to the lawsuit." *Id.* at 8, 9. (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "[A] court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable

to the plaintiff." *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427 (S.D.N.Y. 2005)

(quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

## III.    ARGUMENT

### A. ANY PERSONS OR ENTITIES THAT HAVE ACTUAL AUTHORITY TO MAKE REASONABLE MODIFICATIONS IN POLICIES, PRACTICES, OR PROCEDURES ARE LIABLE UNDER THE ADA.

DAL's argument that it is only illegal for franchisees to be held liable for violation of 42

U.S.C. §12182 fails to comport with the structure, purpose, language, and legislative history of Title

III. In an effort to convince this court that its view of the statute is correct, DAL misrepresents the

ADA's language. DAL's statements are not supported by the ADA, or public policy. The Fifth

Circuit decision that DAL primarily relied on is not persuasive or binding to this Court, and

therefore should be disregarded. Instead, this Court should adopt a more reasonable interpretation

of the ADA by the Eighth Circuit in *United States v. Days Inns of America, Inc.* 151 F.3d 822 (8th

Cir. 1998).

42 U.S.C. §12182 is not limited to parties who own, lease, or operate public

accommodations. In suggesting that 42 U.S.C. §12182 is so limited, DAL fails to explain how its

reading of the statute can be reconciled with the structure of Title III and the language of 42 U.S.C.

§12182 itself, or with an Eight Circuit decision that has interpreted 42 U.S.C. §12182 consistent

with the plain meaning of the statute.

In *United States v. Days Inns of America, Inc.* 151 F.3d 822 (8th Cir. 1998), the Eighth

Circuit established a "significant degree of control test" which allows for people other than owners,

operators, lessees, and lessors to be found liable under ADA. In its argument to the Eighth Circuit,

the franchisor in that case proposed a narrow interpretation of 42 U.S.C. §§12182, 12183, and

argued that with this narrow interpretation the court must find it not liable, because it is a franchisor

that did not own, lease, or operate the underlying property in violation of the ADA. The court

rejected this argument as it clearly defies the intent of Congress in drafting the statute, and the court

resolved the dispute by asserting a plain language interpretation of the sections. In resolving the

6

issue, the court established a "significant degree of control test" by which a franchisor may be held liable if: i) had extensive and pervasive authority to control over the management of the franchisee, as indicated in the language of the franchise agreement, and; ii) it did not exercise this authority to modify the management to comply with ADA.

Here, under the franchise agreement, the franchisees purchased a franchise from DAL, part of what the franchisees purchased is a "proprietary system for establishing and operating restaurants." The system that DAL is selling to each of the Subway restaurant owners includes, among other things, "computer based point-of-sale system," "equipment, furniture, fixtures, signs, advertising, insurance, food products, [and] utilities[.]" The Subway restaurant operations manual ("Operations Manual") is both comprehensive and mandatory throughout the operation of the business.[2] The Operations Manual addresses all aspects of the operation of Subway restaurants, and, under the terms of the license agreement, the licensee is required to operate the restaurant in compliance with all Operations Manual at all times. Section 5b(ii) of the franchise agreement provides:

> "[Defendant ABHIMANUE MANCHANDA] will operate the Restaurant in accordance with [DAL's] Operations Manual which **contains mandatory and suggested specifications, standards, and operating procedures, and may be updated** as a result of experience or changes in the law or marketplace [.] [Defendant ABHIMANUE MANCHANDA] will make any changes to the Restaurant necessary to conform to the Operations Manual within reasonable time periods [DAL] establish, including but not limited to, any necessary repairs, upgrades and remodels. [Defendant ABHIMANUE MANCHANDA] will adhere to quality control standards [DAL] prescribe in the Operations Manual or elsewhere with respect to the character or quality of the products you will sell or the services you will perform in association with the Marks. [] **You will purchase all required food, equipment and other products or services** typically used in a SUBWAY® restaurant exclusively from [a source designated by DAL] [] The Operations Manual, as amended, is intended to further the purposes of this Agreement and is specifically incorporated into this Agreement."
>
> (emphasis added)

---

[2] At this early stage, Plaintiff is not able to obtain a copy of the Operating Manual through discovery.

DAL has control over the East Village Subway Restaurant's anti-discrimination employee training and ADA compliance through the Operations Manual, which is incorporated into the franchise agreement. In addition to requiring compliance with the Operating System, the Franchise Agreement give DAL several additional means of control over the operation of Subway restaurants. For example, franchisees must attend a mandatory training program provided by DAL and "achieve a passing score on [a] standardized test conducted during the training program", *Id.*, at ¶1a; and the restaurant must be operated "in accordance with [DAL's] Operations Manual which contains mandatory and suggested specifications, standards and operating procedures, and may be updated as a result of [] changes in the law []" Id., at ¶5b(ii); the Franchise Agreement typifies the ways in which DAL can and does control the day-to-day operations of the hotels in its system.[3] Section 5b(ii) of the franchise agreement provides, [Defendant ABHIMANUE MANCHANDA will adhere to the quality control standards [DAL] prescribe in the Operations Manual or elsewhere with respect to the character or quality of the products [Defendant ABHIMANUE MANCHANDA] will sell or the services [Defendant ABHIMANUE MANCHANDA] will perform [.]" Section 8b provides, DAL can terminate the franchise agreement if Defendant ABHIMANUE MANCHANDA fails to "substantially perform all of the terms and conditions of this Agreement," or " fail to comply with your duties under this Agreement or the Operations Manual." DAL has the right to change the Operating System at any time, in any fashion it deems necessary. Furthermore, DAL "can revise [the Franchise Agreement] 'at any time during the term of [] Franchise Agreement under any condition and to any extent."[4] As demonstrated by the provisions in the franchise agreement and DAL has the authority to control over a Subway restaurant. And as a matter of fact, it did exercise its control for various of its predatory business purposes over the years. But when the issue of Subway restaurants' ADA compliance is presented before DAL, instead of making itself an accountable and responsible corporate citizen, DAL shields itself with the franchise business model

---

[3] Despite generally denying being an operator of franchise restaurants, DAL does not cite any language in the Franchise Agreement to contend that DAL does not control the East Village Restaurant and all other franchise restaurants in its chain.

[4] Hsu and Abrams, *supra* note 1.

that it abuses its chain restaurant owners with over the years. "In 2018, Subway initiated the equivalent of 29 litigation actions (mostly arbitrations) per 1,000 franchisees."[5]

At the early stage of this case, and due to the instant motion that stays discovery, Plaintiff is not able to obtain a copy of the Operations Manual and other training materials that DAL provided to its franchisees through discovery. But only with the Franchise Agreement and Affidavits of DAL's Local Field Consultant Anna Dipasqua, annexed as **Exhibit C** to Declaration of C.K. Lee, Esq., and Development Agent John Musco, annexed as **Exhibit B** to Declaration of C.K. Lee, Esq., in separate New York state court lawsuits brought by DAL against one of its franchisees, Plaintiff has introduced ample evidence showing the ways in which DAL obtained extensive and pervasive authority to control over the management of the franchisee. Specifically, DAL's Development Agent John Musco made the following sworn statements, "I am one of the development agents for petitioner Doctor's Associates Inc. **and am responsible for overseeing the construction and operation of** over 500 Subway Sandwich Shops in Manhattan, The Bronx, Queens, Westchester and Putnam counties as well as in Southern Connecticut." See **Exhibit B** of Lee Declaration, at 1 (emphasis added). DAL's Local Field Consultant Anna Dipasqua made the following sworn statements, "[a]s a field consultant, I visit the Subway Sandwich Shops in my territory **on a monthly basis** and during each visit I complete a **Restaurant Evaluation and Compliance Review Report** []. The Evaluation Report sets forth any areas of operation of the Subway Sandwich Shop that are not in compliance with the Subway Operations Manual. As part of my responsibilities, immediately following the in-store evaluations, I meet with the franchisees and/or their staff to discuss the areas that are not in compliance and to provide them with a hard copy of the Evaluation Report." See **Exhibit C** to Lee Declaration, at 3 (emphasis added). As

---

[5] *Id.*

disclosed in DAL's Local Field Consultant and Development Agent's sworn affidavits above, DAL sends various kinds of supervisors to Subway restaurants on a monthly basis to provide onsite supervision of each restaurant's operation and management.  During each visit, the Local Field Consultant will onsite supervise all aspects of the restaurant's operation and management according to the Operations Manual and other guidelines specified by DAL. For example, under the Evaluation Report of Local Field Consultant  Dipasqua, if the chain restaurant owner is not able to improve its performance during each Local Field Consultant's visit, DAL could and did regularly apply the termination clause of the franchise agreement to close the business. "In 2016, for the first time ever, more Subway stores closed than opened. But while many franchisees shut down because of underperformance, others operating profitable locations began to feel targeted, too."[6]  Under this one-sided franchise agreement between "David and Goliath," DAL can close any Subway restaurants in the United States by terminating the franchise agreement with various leeways and grounds. Such justifications across the franchise agreement, prepared and drafted by DAL, include failure to "substantially perform all of the terms and conditions of this Agreement []," "fail[ure] to comply with your duties under this Agreement or the Operations Manual[,]" and "fail[lure] to comply with all civil and criminal laws, ordinances, rules, regulations and orders of public authorities[.]" See Franchise Agreement, Section 8. Although DAL aggressively exercises its control over each Subway restaurants' management and operation out of its predatory business purposes, it failed to exercise its control on each Subway restaurant's ADA compliance.

The sample affidavits of the Local Field Consultant and the Development Agent were submitted in support of DAL's enforcement of an arbitral award against one of their noncompliance restaurant owners in New York State.

---

[6] *Id.*

As such, following the "significant degree of control test" established by the Eight Circuit in *United States v. Days Inns of America, Inc.* 151 F.3d 822 (8th Cir. 1998), DAL is liable under 42 U.S.C. §12182 and Plaintiff's Complaint should not be dismissed against DAL pursuant to Fed. R. Civ. P. 12(b)(6).

## B.   EVEN IF THE ADA WAS LIMITED AS DAL SUGGESTS, DAL IS STILL LIABLE BECAUSE IT OPERATES ALL SUBWAY RESTAURANTS.

Even if liability under 42 U.S.C. §12182 were limited to the owners, lessors, lessees, or operations of the public accommodations, which it is not, DAL is still liable for violating 42 U.S.C. §12182. Given the degree of control that it exercises over all aspects of the operation of all franchisees, including the East Village Restaurant, DAL plainly "operates" those restaurants within the meaning 42 U.S.C. §12182. While DAL argues that it does not control the day-to-day operations of the East Village Restaurant, or other Subway restaurants, in making this general argument, DAL relies on no evidence, and disregards a variety of the terms in the Franchise Agreements it produced to Plaintiff. Abundant evidence shows that DAL operates the Restaurant and other franchise restaurants.

### 1.   DAL Operates All Subway Restaurants Through Its "Operations Manual" And Mandatory Training Program

As stated above, part of what a franchisee buys from DAL is a license to use the Operation System, which is both comprehensive and mandatory. It addresses all aspects of the operation of Subway restaurants, and, under the terms of the license agreement, the licensee is required to operate the restaurant in compliance with all Operating System at all times. In addition to requiring compliance with the Operating System, the franchise agreements give DAL several additional means of control over the operation of Subway restaurants, including mandatory training and test, and an Operations Manual.

Although Plaintiff has not had opportunity to obtain a copy of DAL's training materials, test materials and Operations Manual through discovery at this stage, the language of the Franchise Agreement is sufficient to prove that DAL operates East Village Restaurant and all other stores by

11

way of actively directing franchise restaurants to comply with the protocol under the Operation System, and regularly updating its policies and protocols.

2. **DAL Has Absolute Authority To Enforce And Modify The Business's Policy, Practice And Procedure, Including ADA Policy And Employee Training Protocol, Under The Franchise Agreement.**

Section 5a(iii) of the Franchise Agreement provides, "[t]he restaurant will be at a location found by you and approved by us with consideration given to the requirements of the American with Disabilities Act ('ADA')." Under this provision, DAL expressively retains the absolute power to review and audit East Village Restaurant's ADA compliance. Furthermore, Section 8b of the Franchise Agreement provides that DAL can unilaterally terminate the agreement if the franchisee fails to "substantially perform all of the terms and conditions of this Agreement []".

Additionally, under Section 5b(ii) of the Franchise Agreement, DAL requires that the Operations Manual that contains "specifications, standards and operating procedures" must be strictly complied with. Section 5a(ii) provides the franchisee must attend mandatory training and pass a standardized test, violation of any one of the above contractual clauses will trigger the termination clause referenced above.

As a matter of fact, by way of creating contractual obligations, DAL actually keeps all the inherent authority to enforce and modify the business's policy, practice and procedure, including ADA policy and employee training protocol, to itself. The franchisee cannot function or has any authority to enforce or modify the business's policy, practice and procedure, including ADA policy and employee training protocol.

3. **While DAL Selectively Exercised Its Authority To Enforce And Amend The Policy, Practices And Procedure, It Failed To Enforce And Amend The Policy, Practices And Procedure With Regards To ADA Compliance And Employee Training.**

A limited review of the lawsuits brought by DAL against its franchisee in the New York state court docket reveals that DAL regularly exercised its authority to enforce or amend all franchises' policy, practices and procedures by demanding arbitration and enforcing an arbitral

award. Backed with the one-sided franchise agreement, with a mandatory arbitration clause, and questionably arbitral tribunals resolving the disputes under the franchise agreement, DAL not only aggressively exercised its control over each Subway restaurants' management and operation, but also regularly terminate franchise agreements by selectively exercising its control for its predatory business practice. DAL will send different kinds of supervisors to each Subway restaurant to check all aspects of the business operation according to the franchise agreement and Operations Manual, and if a Subway restaurant's management is not in compliance with DAL's protocol, DAL's supervisors will supervise their works by drafting evaluation and report and providing instructions to each Subway restaurant's owners.

By way of an example, in a lawsuit enforcing an Arbitration Award against its former franchisee, DAL's Development Agent John Musco made the following sworn statements, "I am one of the development agents for petitioner Doctor's Associates Inc. and **am responsible for overseeing the construction and operation** of over 500 Subway Sandwich Shops in Manhattan, The Bronx, Queens, Westchester and Putnam counties as well as in Southern Connecticut." **Exhibit B** of Lee Declaration, at 1. (emphasis added). In that matter, DAL sought injunctive relief against the franchisee, as "[the franchisee]'s Subway Sandwich Shop is out of compliance in with several food safety issues." *Id.,* at 2. In the same case, DAL's Local Field Consultant Anna Dipasqua made the following sworn statements, "[a]s a field consultant, **I visit the Subway Sandwich Shops in my territory on a monthly basis** and during each visit I complete a Restaurant Evaluation and Compliance Review Report []. The Evaluation Report sets forth any areas of operation of the Subway Sandwich Shop that are not in compliance with the Subway Operations Manual. As part of my responsibilities, immediately following the in-store evaluations, I meet with the franchisees and/or their staff to discuss the areas that are not in compliance and to provide them with a hard copy of the Evaluation Report." **Exhibit C** to Lee Declaration, at 3. (emphasis added). As stated by DAL's Development Agent and Local Field Consultant in their respective sworn statements above, DAL monthly send staffs to supervise the franchisee and its employees, and as shown by a sampling Evaluation and Compliance Review Report completed by Local Field Consultant Anna Dipasqua

13

in that case, annexed as **Exhibit D** to Lee Declaration, when DAL's staffs visit and supervise the franchisee and its employees, it covers the most extreme minutiae of each store's business operation.

As a matter of fact, DAL retains a substantial degree of control over the franchise business's operation. Accordingly, DAL should be held liable under the ADA.[7]

4. **As reflected in the sample Evaluation Report prepared by DAL's Local Field Consultant, DAL operates each Subway restaurants by closely supervising all aspects of the restaurants' operation and management.**

DAL retained Local Field Consultant to visit each restaurant on a monthly basis. See Affidavit of Anna Dipasqua, ¶2, annexed as **Exhibit C** to Lee Decl. During each visit, the Local Field Consultant will closely supervise all aspects of the restaurants' operation and management in the following manner:

> "[The Local Field Consultant] visit[s] the SUBWAY® Sandwich Shops in [the designated] territory on a monthly basis and during each visit [the Local Field Consultant] complete[s] a Restaurant Evaluation and Compliance Review Report (the 'Evaluation Report'). The Evaluation Report sets forth any areas of operation of the SUBWAY® Sandwich Shop that are not in compliance with the SUBWAY® Operations Manual. As part of [the Local Field Consultant's] responsibilities, immediately following the in-store evaluations, [the Local Field Consultant] meet[s] with the franchisees and/or their staff to discuss the areas that are not in compliance and to provide them with a hard copy of the Evaluation Report."

In the monthly Evaluation Report, annexed as **Exhibit D** to Lee Decl., the Local Field Consultant will check the all aspects of the restaurant's management and operation. The monthly Evaluation Report for each franchisee restaurant provides for directive that franchisee must follow for each of the following topics: "product labeling," "product rotation," "product temperatures," "cross contamination prevention," "pest control," "quality temperature check," "sandwich making,"

---

[7] NYSHRL and NYCHRL claims against DAL are similar to ADA claims.

"product preparation," "cleanliness interior and exterior," "product resources," "equipment," "record keeping/POS System/Transmission," "uniforms/personal grooming," "advertising/marketing materials," "days & hours of operation," and "profitability and goals."

In the only publicly filed Evaluation Report that Plaintiff was able to obtain (not through discovery in this lawsuit), the Evaluation Report demonstrates control over every facets of the business operation:

- "Frozen perishable products [] were not properly labeled." Evaluation Report, p1.
- "None of the products prepped and stored in the sandwich unit or backroom cooler contained the complete labelling information necessary for proper product rotation or monitoring shelf life." Evaluation Report, p1.
- "Please label all thawing products and prepped products with a date, time, and initial of employee responsible to ensure proper rotation and all products must be served within shelf life." Evaluation Report, p1.
- "Lettuce displayed in the sandwich unit was not fresh, was extremely discolored at the bottom of the Cambro, and had a foul smell. Please remove any product that is not fresh from the sandwich unit immediately [.]" Evaluation Report, p2.
- "Soda syrup served through the beverage fountain today was not within tis quality 'enjoy by' date. Please be sure to monitor all product expiration dates closely to ensure that only the highest quality, freshest products are served to customers each day, and to avoid customer illness." Evaluation Report, p2.
- "Tomatoes, onions, and peppers were not prepped properly today. Tomatoes must be cored prior to slicing, peppers must be cored, halved, and rinsed free of seeds, and onions must be halved and then cored." Evaluation Report, p2.
- "Vegetable cores and seeds are unappetizing and unsightly and should be properly removed from products prior to serving to customers." Evaluation Report, p2.
- "Pastrami was not pre-portioned to the correct weight of 4.0 ounces today, instead consistently weighing 3.0-3.5 ounces per tray." Evaluation Report, p2.
- "The seasoning pan was left out on the backroom shelf at room temperature today, which is incorrect. Please store unused seasoning in the covered tray, stored inside of the cooler in an effort to avoid the growth of harmful bacteria. Unused seasoning should be discarded at the end of each day, and the tray must be washed and sanitized." Evaluation Report, p2.
- "Poland Spring water was still served in the bottled beverage cooler, which is not an approved product for distribution in any Subway restaurant. Please replace with approved Dasani Water purchased from your approved supplier in accordance with policy." Evaluation Report, p3.
- "Today we had 27 favors of bottled beverages and 17 varieties of chips. The maximum number of bottled beverages is 15. The maximum for chips is 14. Please reduce these selections." Evaluation Report, p3.
- "A thermometer was not present in the store today, and the only staff member here did not even know what I was referring to when I requested this crucial piece of equipment. It is

imperative that you purchase a thermometer immediately in order to enable your staff to properly take food temperatures and record them on the food safety temperature logs required by the Health Department." Evaluation Report, p3.

- "The Vegetable slicer needs to have its blades sharpened or replaced, as it is tearing the product and not cutting cleanly." Evaluation Report, p3.
- "Food safety temperature logs was not present and complete today, and neither were Control Sheets or WISRs." Evaluation Report, p4.
- "Employees were wearing the complete uniform." Evaluation Report, p4.
- "We had two extremely old footers on display for Cordon Bleu and Steak. These need to be replaced with the current menu footers for this window." Evaluation Report, p4.
- "You have reduced your business hours by opening at 9 AM, which with M-S 9 AM-10 AM, and Sunday, 10 AM-10 PM, equals out to 90 hours, failing short of the 98 hours we are required to be open at a minimum." Evaluation Report, p5.

Further discovery will only demonstrate the extreme control that DAL has over each franchisee.

DAL's Local Field Consultant reprimanded a restaurant's employee's outlook by making the following statement in the Evaluation Report: "[u]niform – the only staff member present today was not wearing an apron or a name tag. Please have your staff members wear the complete Subway uniform at all times during scheduled shifts in an effort to improve the professional appearance of your team."

DAL's Local Field Consultant also reprimanded the restaurant's owner by making the following statements in the Evaluation Report: "[y]ou have reduced your business hours [], failing short of the 98 hours we [sic] required to be open at a minimum. Have you been putting in efforts to make customers aware we sell breakfast? Bag stuffing flyers/coupons to promote the program to your lunch customers, who are on their way to work in the morning?" DAL has control over franchisee's discussions with customers. For certain, DAL has control over the interactions of franchisees with disabled customers, or they willfully refuse to effect compliance with the ADA.

At the end of the Evaluation Report, the Local Field Consultant made the following "direction" and provided the "hands-on training and coaching" to the restaurant's owner:

"Direction & Goals
Dear [Restaurant Owner]:
The store was found to be out of compliance in the areas of Product Dating, Product Quality, Product Preparation, Cleanliness,

> Approved Products, Equipment, Record Keeping, Advertising, and Hours of Operations, with areas in need of improvement as follows: Uniforms.
> Please work with your team to address the issues found as soon as possible."

DAL will argue that it only controls food health and not employees, (because they don't run the stores). Even under the Franchise Agreement, the look and feel, decoration and equipment used by franchisee is completely determined by DAL, and their control is not limited to food health issue. See Franchise Agreement, Section 5c. As revealed by DAL's Local Field Consultant's affidavit and Evaluation Report, DAL closely supervises each Subway restaurant by sending Local Field Consultants on a monthly basis, the Local Field Consultants will review each restaurant's operation and management pursuant to the franchise agreement and Operations Manual, and after a review and investigation of the restaurant's operation and management, the Local Field Consultants will provide a work performance review to the restaurant's owner. This process demonstrates that DAL operates each Subway restaurant.

## IV.   CONCLUSION

For all the foregoing reasons, DAL's motion to dismiss should be denied in its entirety.

Dated: July 12, 2019

Respectfully submitted,

 /s/ *C.K. Lee*
By:  C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

17