USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHILLIP SULLIVAN, JR.,  :
  :
                        Plaintiff,  :
  :      1:19-cv-719-GHW
           -against-  :
  :      MEMORANDUM OPINION
DOCTOR'S ASSOCIATES LLC, GEETA  :      AND ORDER
FASTFOOD ENTERPRISE INC, and  :
ABHIMANUE MANCHANDA,  :
  :
                       Defendants.  :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Plaintiff Phillip Sullivan, Jr. is deaf. He alleges that an employee of a Subway restaurant was rude to him when he attempted to order a steak sandwich. Based on that incident, Plaintiff brings this action alleging violations of Title III of the Americans with Disabilities Act ("ADA"), analogous provisions of New York state law, and the New York City Human Rights Law ("NYCHRL"). Plaintiff also alleges that the ADA requires all Subway restaurants to adopt technologies that will improve the accessibility of restaurants for hearing-impaired individuals. Defendant Doctor's Associates LLC ("DAL") is the franchisor of Subway restaurants. It moves to dismiss Plaintiff's claims against it. Because Plaintiff has not plausibly alleged that DAL is an operator of the Subway restaurant where the incident occurred, DAL's motion to dismiss is GRANTED.

# I. BACKGROUND

## A. Facts[1]

DAL is the "franchisor of Subway restaurants." FAC ¶ 9. "Subway is a fast-food restaurant franchise that primarily sells submarine sandwiches, with over 26,000 restaurants in the United States owned and operated by the chain's franchisees." *Id.* DAL enters into franchise agreements (the "Franchise Agreements") with individual franchisees. *See id.* ¶ 27. Defendant Geeta Fastfood Enterpise Inc. (the "Franchisee") is the franchisee of the Subway where Plaintiff allegedly experienced discrimination (the "Restaurant"). *Id.* ¶ 10. Defendant Abhimanue Manchanda is the owner of the Restaurant. *Id.* ¶ 11.

### 1. September 28, 2018 Incident

"Plaintiff is a profoundly deaf individual whose first and primary language is American Sign Language, in which he communicates fluently." *Id.* ¶ 13. "On September 20, 2018, Plaintiff personally visited" the Restaurant "with the intention of buying a steak sandwich." *Id.* ¶ 14. The employee in charge of taking orders allegedly "noted . . . [t]he fact that Plaintiff was deaf[.]" *Id.* ¶ 15. "Plaintiff pointed to the food on the counter and used hand gestures to indicate that he wanted a steak sandwich." *Id..* The employee allegedly became "impatient and angry" with Plaintiff's attempt to communicate with hand gestures. *Id.* ¶ 16. "The employee used angry hand gestures and aggressive body language when communicating with Plaintiff." *Id.*

This allegedly left Plaintiff feeling "humiliated and confused." *Id.* "The Restaurant employee then expressed her anger by taking a sandwich and forcefully smashing the sandwich flat on the counter." *Id.* ¶ 17. "Plaintiff's order was not processed, and no other Restaurant employee communicated with Plaintiff[.]" *Id.* ¶ 18. "Plaintiff then left the Subway Restaurant." *Id.* Plaintiff

---

[1] The facts are drawn from Plaintiff's First Amended Complaint ("FAC"), Dkt No. 42, and are accepted as true for the purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

alleges that based on this incident, "Defendants failed to provide the same service to deaf individuals as they provide to hearing (i.e., non-deaf) individuals." *Id.* ¶ 19.

### 2. DAL's Control Over Franchisees

Plaintiff also makes allegations about the relationship between DAL and its franchisees. The FAC alleges that DAL, as the franchisor of Subway restaurants, "is responsible for setting company policy and providing adequate ongoing training on a regular basis to franchise owners." *Id.* ¶ 22. Plaintiff alleges that DAL is "also responsible for providing ongoing support and necessary tools and resources to its franchise owners, including regular training and education on providing proper access to individuals with disabilities under the ADA." *Id.* In addition, DAL is allegedly responsible for maintaining "brand reputation, awareness, and development." *Id.*

Furthermore, the FAC alleges that DAL is responsible for Subway restaurants' compliance and adherence to laws, franchisee training, and the manner in which franchise owners conduct their businesses. *Id.* ¶ 23. DAL also allegedly sets the Employment Practices and Code of Conduct policy for all franchisees. *Id.* Plaintiff alleges that DAL "failed to fulfill its responsibility to set anti-harassment and anti-discrimination policies within its Employment Practices and/or Code of Conduct policies." *Id.*

Plaintiff also alleges that DAL exercises control over its franchisees through the Franchise Agreements. According to the FAC, the Franchise Agreements are "standardized." *Id.* ¶ 25. Plaintiff attaches to the FAC three copies of sample franchise agreements entered into between DAL and other restaurant owners in New York state. *Id.* ¶ 25; *see* Exs. A-C to FAC, Dkt No. 42-1 *et seq.*[2]

The Franchise Agreements require a franchisee to abide by the Subway restaurant operating system (the "Operating System"). *Id.* ¶ 11. The Operating System "is both comprehensive and

---

[2] Because these franchise agreements are substantially similar, the Court will refer to exhibit C as the "Franchise Agreement."

3

mandatory." *Id.* The Franchise Agreements also state that franchisees must be operated "in accordance with" DAL's operations manual (the "Operations Manual"), "which contains mandatory and suggested specifications, standards and operating procedures and may be updated as a result of experience or changes in the law or marketplace." Franchise Agreement at 6, § 5(b)(ii); *see also id.* at 6, § 5(a)(iv); FAC ¶ 28. At the franchisee's "sole expense," the franchisee must "make any changes to the Restaurant necessary to conform to the Operations Manual within reasonable time periods we establish, including but not limited to any necessary repairs, upgrades and remodels." Franchise Agreement at 6, § 5(b)(ii); *see also* FAC ¶ 28. Through the Franchise Agreements, the Operating System, and the Operations Manual, Plaintiff alleges that DAL "exercises control over ADA compliance and anti-discrimination employment training of its franchise restaurants throughout the United States." FAC ¶ 25.

Plaintiff also points to other provisions of the Franchise Agreement that, he alleges, show the degree of control exercised by DAL over Subway restaurants. Section 5(a)(iii) of the Franchise Agreement states that "[t]he [restaurant] will be at a location found by [the franchisee] and approved by [DAL] with consideration given to the requirements of the Americans with Disabilities Act ('ADA')." Franchise Agreement at 6, § 5(a)(iii); *see also* FAC ¶ 26. Franchisees must also attend a mandatory training program provided by DAL and achieve a passing score on a standardized test conducted during the training program. Franchise Agreement at 6, § 5(a)(ii); *see also* FAC ¶ 28. In addition, a franchisee must operate their restaurant "in accordance with all existing and future applicable laws and governmental regulations," and franchisees must "pay all fees and costs associated with such compliance." Franchise Agreement at 6, § 5(b)(i); *see also* FAC ¶ 28. DAL can terminate the Franchise Agreement in the event of a breach by the franchisee. Franchise Agreement at 10, § 8(b)(v); *see also* FAC ¶ 26.

Plaintiff alleges that DAL "controls operations, including the type of equipment, point-of-sale system, trademarks, decoration, look and feel of each" franchise. FAC ¶ 24. Relatedly, section

4

5(f) of the Franchise Agreement states that a franchisee must "use a computer based point-of-sale system ('POS System'), including software that [DAL] specif[ies] and hardware compatible with [DAL's] requirements, to record and report all sales and other designated business information to [DAL]." Franchise Agreement at 6, § 5(f); *see also id.* at 9, § 5(p) ("To better manage business functions and control costs, you may be required to invest in and implement new technology initiatives at your own expense which may include, but will not be limited to, acceptance of debit cards, WIFI-related technology and software applications.").

Plaintiff also alleges that the restaurant lacked "order pads, two-way keyboards, order screens, and information screens" that are designed for hearing impaired individuals. FAC ¶ 42. The FAC provides details about "one accessible store" operated by the "Starbucks Coffee Company" that has allegedly implemented this technology. *Id.* ¶¶ 37-42.

### B. Procedural History

Plaintiff filed his complaint on January 24, 2019. Dkt No. 1. DAL filed a motion to dismiss on May 10, 2019. Dkt No. 28. Plaintiff filed the FAC on May 31, 2019. Dkt No. 42. The FAC asserts five causes of action against Defendants. First, Plaintiff asserts a cause of action for violation of Title III of the ADA. FAC ¶¶ 57-72. Second, Plaintiff asserts two causes of action for violation of New York state law. *Id.* ¶¶ 73-98. Third, Plaintiff asserts a cause of action for violation of the NYCHRL. *Id.* ¶¶ 99-109. Finally, Plaintiff asserts a cause of action for declaratory relief. *Id.* ¶¶ 110-12. The FAC asserts claims for class-wide relief under Federal Rule of Civil Procedure 23(b)(2). *Id.* ¶¶ 43-48. DAL filed a motion to dismiss on June 28, 2019 seeking dismissal of all claims asserted in the FAC against DAL. Dkt Nos. 46-47. Plaintiff filed his opposition on July 12, 2019. Dkt Nos. 48-49. DAL filed a reply on July 18, 2019. Dkt No. 50.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's

5

claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertions devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (brackets omitted) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertions" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (brackets omitted) (citing *Twombly*, 550 U.S. at 555, 557).

In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

6

However, "extrinsic documents may be considered as part of the pleadings if they either are (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Id.* (quotation omitted). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'" *Id.* (quoting *Chambers*, 282 F.3d at 153) (brackets omitted). While the Court must accept the facts as alleged in the complaint, "when any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

Plaintiff has submitted a declaration of his counsel, C.K. Lee, in support of his opposition to the motion to dismiss which attaches sworn statements that representatives of DAL have made in other cases. Dkt No. 48. The Court cannot consider these materials on a motion to dismiss because they are not "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *DeLuca*, 695 F. Supp. 2d at 60. The FAC does not attach these documents; it also does not make a "clear, definite, and substantial reference" to these documents as required for the documents to be deemed "incorporated by reference. *Id.* And the Court cannot conclude that Plaintiff "relied upon the documents in framing the complaint" because they are not referenced in the FAC. *Id.* Therefore, the Court did not consider these documents in deciding this motion.

### III. DISCUSSION

#### A. ADA Claim

Section 302(a) of the ADA ("Section 302(a)") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

7

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[3] "To state a claim under Title III, [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing, *inter alia*, 42 U.S.C. § 12182(a)).

Plaintiff objects to the second prong of the *Camarillo* test. Plaintiff argues in his opposition that Title III liability "is not limited to parties who own, lease, or operate public accommodations[.]" Memorandum of Law In Opposition to Motion to Dismiss ("Opp."), Dkt No. 48, at 6. Plaintiff argues that the Court should broaden the second prong of the *Camarillo* test to include any party that exerts a "significant degree of control" over a place of public accommodation. According to Plaintiff, the Eighth Circuit adopted this standard in the franchisor-franchisee context in *United States v. Days Inns of Am., Inc.* 151 F.3d 822 (8th Cir. 1998).

Plaintiff's argument is inconsistent with Second Circuit precedent that is binding on the Court. *Camarillo* held that a plaintiff must allege that the defendant "own[s], lease[s], or operate[s] a place of public accommodation" to state a claim under Title III. 518 F.3d at 156. The Court is bound by that holding. Furthermore, Plaintiff's argument is inconsistent with the plain text of Section 302(a), which states that "[n]o individual shall be discriminated against on the basis of disability . . . by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)).

Moreover, Plaintiff is incorrect that *Days Inns* adopted a significant degree of control test for liability under Title III. Rather, it adopted that test under section 303(a) of the ADA. Under that

---
[3] Section 302(a) is a subsection of Title III of the ADA.

8

section, discrimination is defined to include "a failure to design or construct facilities . . . that are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a). This "design and construct" liability is distinct from liability imposed under Title III. Thus, Plaintiff has not cited any authority for his proposed test for operator liability under Title III.[4]

Additionally, under Plaintiff's proposed test, franchisors would risk liability under Title III for any misconduct committed by a franchisee. The Court would be reluctant to extend Title III liability in this manner because "the typical franchise agreement . . . establish[es] the franchise as an independent business, operating at the franchisee's direction and for its own benefit." *Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, 10 CV 1091 RJD CLP, 2013 WL 5656143, at *5 (E.D.N.Y. Oct. 11, 2013) (citation omitted). In any event, the Court is bound to apply the standard laid out by the Second Circuit in *Camarillo*: The FAC must plausibly allege that DAL owns, leases, or operates the Restaurant to survive DAL's motion to dismiss.

Plaintiff does not allege that DAL owns the Restaurant. *See* FAC ¶¶ 10-11 (alleging that Geeta Fastfood Enterprise, Inc. "holds the business license to operate" the Restaurant and that Abhimanue Manchanda "owns [the Restaurant] under the business entity Geeta Fastfood Enterprise Inc."). Plaintiff also has not adequately pleaded that DAL has a leasehold interest in the Restaurant. Section 5(a)(iii) of the Franchise Agreement states that DAL "or an Affiliate [DAL] designate[s] will lease the premises and sublet them to you." Franchise Agreement at 6, § 5(a)(iii). The FAC does not allege that DAL—as opposed to an affiliate—leases the restaurant to the Franchisee or the Owner. Therefore, Plaintiff has not adequately pleaded that DAL is the lessor of the restaurant, and the FAC is insufficient to support Title III liability on that ground.

---

[4] Indeed, the *Days Inns* court held that the franchisor "did not serve as an 'operator'" of the franchisee in that case despite the fact that the franchisor had provided the franchisee with a manual containing "a provision requiring the franchisee to ensure ADA compliance." 151 F.3d at 824. Because Plaintiff points to the Operations Manual as a reason that the Court should extend liability to DAL in this case, *Days Inns* appears to support DAL's position.

Hence, the principal issue is whether DAL "operates" the Restaurant. The first step in that analysis is to determine the appropriate definition of the term "operates." The Court is persuaded to adopt the definition propounded in *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995). The *Neff* court held that "'[t]o operate' in the context of a business operation, means 'to put or keep in operation,' 'to control or direct the functioning of,' [or] 'to conduct the affairs of; manage.'" *Id.* (quoting dictionaries).[5] The question for the *Neff* court was thus whether the franchisor in that case had "exercise[d] sufficient control" over the franchisee to bring the franchisor within this definition of "operate." *Id.* *Neff* held that "the relevant inquiry" to determine whether a franchisor is an "operator" under Title III is "whether [the franchisor] specifically controls" a franchisee's "accessibility to the disabled." *Id.* *Neff* also held that "supervisory authority, without more, is insufficient to support a holding that [a franchisor] 'operates,' in the ordinary and natural meaning of that term, [a franchisee]." *Id.* at 1068-69. Other courts to have considered the question have likewise been persuaded that this standard is appropriate under Title III.[6] Therefore, the Court adopts the *Neff* court's standard for operator liability under Title III.

The question presented in this case is thus whether Plaintiff has adequately alleged that DAL specifically controls the Restaurant's accessibility to the disabled. The FAC alleges that DAL exerts general control over the Restaurant. For example, DAL can require compliance with the Operations Manual and can terminate the Franchise Agreement if a franchisee refuses to do so. Franchise Agreement at 10, § 8(b)(v). However, Plaintiff's allegations of general control are insufficient to plausibly plead that DAL is an operator under Title III. This is the very sort of "supervisory

---

[5] In a non-precedential opinion, the Second Circuit has endorsed that definition. *See Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 91 (2d Cir. 2010) (quoting *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 849 (9th Cir. 2004) (quoting *Neff*, 58 F.3d at 1066)).
[6] *See, e.g.*, *Lemmons v. Ace Hardware Corp.*, 12-CV-03936-JST, 2014 WL 3107842, at *6 (N.D. Cal. July 3, 2014) ("To be considered an 'operator' . . . a person or entity must have an active and significant degree of control over the access related aspects of the facility in question."); *cf. Perry v. Burger King Corp.*, 924 F. Supp. 548, 554-55 (S.D.N.Y. 1996) (citing *Neff* in finding franchisor not liable for alleged racial discrimination by franchisee employees).

10

authority" that the *Neff* court rejected as a basis for operator liability under Title III. 58 F.3d at 1069.

Plaintiff offers several arguments for why DAL is an operator under Title III. Plaintiff argues "DAL operates all Subway restaurants through its 'Operations Manual' and mandatory training program." Opp. at 14; *see* FAC ¶¶ 22-24, 28 (alleging that DAL "is responsible for setting company policy" and sets "Employment Practices" and a "Code of Conduct" for the Franchisee). However, general allegations that a franchisor provides a manual and a training program for employees are not sufficient to establish that DAL specifically controls the Restaurant's accessibility to the disabled. *See United States v. Days Inns of Am.*, 22 F. Supp. 2d 612, 616 (E.D. Ky. 1998) (holding that a franchisor was not an "operator" despite "standard operating manual given to" franchisees); *United States v. Days Inns of Am.*, CIV. S-96-260 WBSGGH, 1998 WL 461203, at *5 (E.D. Cal. Jan. 12, 1998) (concluding that a franchisor was not an "operator" even though it provided franchisees with a manual of standards with "minimum acceptable requirements" and conducted evaluations and inspections for compliance).

Plaintiff also argues that "DAL has absolute authority to enforce and modify" the Restaurant's "policy practice and procedure, including ADA policy and employee training protocol under the franchise agreement." Opp. at 15. Plaintiff points to four sections of the Franchise Agreement in support of this argument. First, section 5(a)(iii) of the Franchise Agreement, which states that "[t]he restaurant will be at a location found by you and approved by us with consideration given to the requirements of the Americans with Disabilities Act ('ADA')." Franchise Agreement at 6, § 5(a)(iii). As DAL correctly notes, "[t]he physical layout of a franchise location has nothing to do with Plaintiff's claim, which is that the Franchisee's staff prevented him from ordering." Reply Memorandum in Support of Motion to Dismiss, Dkt No. 50, at 6. Second, section 8(b)(v) of the Franchise Agreement states that DAL can unilaterally terminate the agreement if the franchisee fails to "substantially perform all of the terms and conditions of this Agreement[,]" Franchise

Agreement at 10, § 8(b)(v). This, too, is an allegation that DAL has general supervisory authority; it is not a plausible allegation that DAL specifically controlled the Restaurant's accessibility to the disabled.

Third, section 5(b)(ii) of the Franchise Agreement states that a franchisee must strictly comply with "specifications, standards and operating procedures" established in the Operating Manual. Franchise Agreement at 6, § 5(b)(ii); *see* FAC ¶¶ 24-25 (alleging that DAL "controls operations" of franchisees, provides "regular training and education on providing proper access to individuals with disabilities under the ADA," and "controls and directs employee training protocol"). Fourth, section 5(a)(ii) states that a franchisee must attend mandatory training and pass a standardized test and that the lease may be terminated if the franchisee fails to do so. Franchise Agreement at 6, § 5(a)(ii). Again, these are allegations of general supervisory authority and thus are not a basis for operator liability under Title III. *See Days Inns of Am.*, 22 F. Supp. 2d at 616 (concluding that a franchisor was not an "operator" despite annual training program provided to franchisees, tri-annual quality assurance inspections, and supervisory power over facilities' plans).

Nor do Plaintiff's allegations that DAL "controls operations, including the type of equipment, point-of-sale system, trademarks, decoration, look and feel of each" franchise establish that DAL is an operator with respect to the customer-ordering process. FAC ¶ 24. Once again, these are allegations that DAL has general supervisory authority and thus are insufficient to plead that DAL specifically controls the Restaurant's accessibility to the disabled.

Similarly, the provision in the Franchise Agreement specifying that employees must use a "computer based point-of-sale ('POS System'), including software that [DAL] specif[ies] and hardware compatible with [DAL's] requirements" does not enable Plaintiff to plausibly allege that DAL is an operator with respect to the Restaurant's accessibility to the disabled. Franchise Agreement at 6, § 5(f). This provision is directed toward controlling back-end communications between DAL and franchisees. *See id.* (requiring franchisees to use specific software and hardware

"to record and report all sales and other designated business information to us"). Plaintiff's allegations pertain to communications between Restaurant employees and customers, not communications between franchisees and DAL. Thus, these allegations are insufficient to plead that DAL specifically controls the Restaurant's accessibility to the disabled. Accordingly, because Plaintiff has failed to plausibly allege that DAL is an operator of the Restaurant, Plaintiff's ADA claims are dismissed.

### B. New York State Law Claims

In addition to his Title III claims, Plaintiff brings claims for violations of the New York State Human Rights Law and New York State Civil Rights Law. Plaintiff's only argument related to these claims in his opposition is that they "are similar to" his ADA claims. Opp. at 14 n.7. Where, as here, a plaintiff's "State-law claim is coextensive with [her] Title III claim," *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) (citation omitted), the NYSHRL claim "rises or falls with the ADA claim." *Dicarlo v. Walgreens Boot All., Inc.*, 15-CV-2919 (JPO), 2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2016) (citation omitted). Consequently, because the Court has dismissed Plaintiff's ADA claims, it also dismisses Plaintiff's New York state law claims.

### C. NYCHRL Claim

Finally, Plaintiff alleges a violation of the NYCHRL. Again, Plaintiff's only argument related to these claims is that they "are similar to" his ADA claims. Opp. at 14 n.7. However, although NYCHRL claims had for many years "been treated as coextensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), "rejected such equivalence" in favor of a broader remedial scope. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). The Restoration Act established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the

13

accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *See id.* The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

In this case, "[t]hough there are differences between the statutes, such as the definition of disability, the Court has not found—and the parties have not identified—any relevant difference between the analysis required by the NYCHRL and the analysis required by the federal laws of the question at issue here." *Dicarlo*, 2016 WL 482982, at *2 (quotation omitted). Indeed, Plaintiff—who stands to benefit from a liberal construction of the NYCHRL—has argued that the NYCHRL claims are similar to his ADA claims. Accordingly, Plaintiff's NYCHRL claims are likewise dismissed.

## IV. CONCLUSION

DAL's motion to dismiss is GRANTED. The Court grants Plaintiff leave to replead all of his claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead."). Any amended complaint must be filed no later than 14 days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 46.

SO ORDERED.

Dated: January 17, 2020  
New York, New York

GREGORY H. WOODS  
United States District Judge