```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PHILLIP SULLIVAN, JR.,                               :
                                                     :
                                  Plaintiff,         :
                                                     :         1:19-cv-719-GHW
             -against-                               :
                                                     :         MEMORANDUM OPINION
DOCTOR'S ASSOCIATES LLC, GEETA                       :              AND ORDER
FASTFOOD ENTERPRISE INC, and                         :
ABHIMANUE MANCHANDA,                                 :
                                                     :
                                  Defendants.        :
------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

     Plaintiff Phillip Sullivan, Jr. is deaf. He alleges that he was treated poorly by a restaurant employee and was ultimately unable to order a sandwich. Plaintiff argues that the rude treatment he received amounted to actionable discrimination in violation of Title III of the Americans with Disabilities Act ("ADA") and analogous state and city law provisions. Plaintiff argues that these anti-discrimination statutes require each and every Subway restaurant to install technology that would allow hearing-impaired individuals to place orders though a touch-screen interface, which would obviate the need for customers to interact with restaurant employees to place an order.

     Defendant Doctor's Associates LLC ("DAL"), the franchisor of Subway restaurants, has moved to dismiss Plaintiffs' claims against it. Because the ADA and the analogous state and city law provisions upon which Plaintiff relies require only that an establishment ensure that its employees can communicate effectively with disabled patrons—and, so long as they meet this requirement, do not require establishments to adopt specific technology, no matter how allegedly cost-effective or convenient—and because Plaintiff has failed to allege that DAL operates the Subway restaurant at which Plaintiff allegedly experienced discrimination, DAL's motion to dismiss is GRANTED.

**I. BACKGROUND**[1]

Plaintiff, "a profoundly deaf individual," SAC ¶ 23, alleges that an employee at a Subway restaurant (the "Restaurant") "became hostile and angry, using hostile hand gestures and aggressive body language" when plaintiff attempted to order a steak sandwich. *Id.* ¶ 26. Plaintiff asserts that DAL, as the franchisor of Subway restaurants, "has actual control and responsibility over all Subway restaurants' compliance, adherence to laws, franchise training, and the way franchise owners conduct their business[.]" *Id.* ¶ 15. Thus, based on his experience at Subway, Plaintiff alleges DAL violated the ADA and analogous New York state and New York City law provisions by not providing technology to improve accessibility for hearing impaired individuals in Subway restaurants. *Id.* ¶¶ 76-132. Plaintiff commenced this action on January 24, 2019, Dkt No. 1, and filed the FAC on May 31, 2019. Dkt. No. 42. DAL then filed a motion to dismiss on June 28, 2019 seeking dismissal of all claims asserted in the FAC against DAL. Dkt. Nos. 46-47.

**A. The Court's Opinion in *Sullivan I***

The Court granted DAL's motion to dismiss. *Sullivan I*, 2020 WL 353752, at *8. The Court initially noted that, to survive the motion to dismiss, Plaintiff was required to "plausibly allege that DAL owns, leases, or operates the Restaurant." *Id.* at *5 (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) ("To state a claim under Title III, [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide.") (citations omitted)); *see also* 42 U.S.C. §

---

[1] The Court has published an opinion in this case that provides further background. *See Sullivan v. Doctor's Assocs. LLC* ("*Sullivan I*"), 1:19-CV-719-GHW, 2020 WL 353752 (S.D.N.Y. Jan. 17, 2020). *Sullivan I* provides a thorough exposition of the relevant facts as alleged in Plaintiff's First Amended Complaint ("FAC"), Dkt No. 42. Most of the relevant facts are unchanged between the FAC and the operative complaint on this motion to dismiss, Plaintiff's Second Amended Complaint ("SAC"), Dkt No. 58. Thus, although the Court's discussion in this section focuses principally on the new facts alleged in the SAC, the Court has considered all of the factual allegations in the SAC. The facts alleged in the SAC are accepted as true for the purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12182(a). Because Plaintiff inadequately pleaded that DAL was the lessor of the Restaurant and did not allege that DAL owned the Restaurant, the principal issue was whether DAL "operated" the Restaurant within the meaning of Title III. *Sullivan I*, 2020 WL 353752, at *5-6.

In its analysis, the Court adopted the definition of "operate" stated in *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995). *Sullivan I*, 2020 WL 353752, at *6. *Neff* held that "supervisory authority, without more, is insufficient to support a holding that a franchisor 'operates,' in the ordinary and natural meaning of that term, a franchisee." *Id.* (quoting *Neff*, 58 F.3d at 1068-69) (brackets omitted). Thus, the issue was "whether Plaintiff ha[d] adequately alleged that DAL specifically controls the Restaurant's accessibility to the disabled." *Id.*

The Court held that Plaintiff's allegations failed to meet this standard. *Id.* at *7. Plaintiff's argument that "DAL operates all Subway restaurants through its Operations Manual and mandatory training program" failed because "general allegations that a franchisor provides a manual and a training program for employees are not sufficient to establish" specific control over a restaurant's accessibility to the disabled. *Id.* at *6 (quotation marks and citation omitted). The Court found Plaintiff's argument that "DAL has absolute authority to enforce and modify the Restaurant's policy practice and procedure, including ADA policy and employee training protocol" under the franchise agreement unpersuasive. *Id.* (quotation marks omitted). Plaintiff again failed to plausibly allege that DAL specifically controlled the Restaurant's accessibility to the disabled because the franchise agreement conferred only general supervisory authority to DAL over the Restaurant. *Id.*

The Court also rejected Plaintiff's argument that DAL's control over the "customer ordering process" demonstrated DAL's specific control over the Restaurant. *Id.* at *7. Plaintiff's allegations that DAL "controls operations, including the type of equipment, point-of-sale system, trademarks, decoration, [and the] look and feel of each franchise" again only highlighted DAL's general supervisory authority over the Restaurant. *Id.* (quotation marks omitted).

3

Similarly, the Court concluded that a provision in DAL's franchise agreement, which was attached as an exhibit to the FAC, "specifying that employees must use a 'computer based point-of-sale ("POS System"), including software that DAL specifies and hardware compatible with DAL's requirements" was insufficient to allege that DAL specifically controlled the Restaurant's accessibility to the disabled. *Id.* (citation omitted). That was because this provision was "directed toward controlling back-end communications between DAL and franchisees[,]" while "Plaintiff's allegations pertain[ed] to communications between restaurant employees and customers[.]" *Id.* Thus, the Court held that Plaintiff's customer ordering process allegations were insufficient to plead that DAL specifically controlled the Restaurant's accessibility to the disabled. *Id.* Because Plaintiff failed to plausibly allege that DAL is an operator of the Restaurant, the Court dismissed Plaintiff's ADA claims. *Id.*

In addition to dismissing Plaintiff's ADA claims, the Court also dismissed Plaintiff's New York state law and New York City Human Rights Law ("NYCHRL") claims. The Court dismissed Plaintiff's New York state law claims because such claims are "coextensive with" and "rise[] or fall[] with" ADA claims, which the Court had already dismissed. *Id.* (quotation omitted). And, while courts are required "to analyze NYCHRL claims separately and independently from any federal and state law claims," the Court did not find "any relevant difference between the analysis required by the NYCHRL and the analysis required by the federal laws of the question at issue." *Id.* at *7-8 (quotation omitted). Indeed, Plaintiff "argued that [his] NYCHRL claims [were] similar to his ADA claims." *Id.* at *8 (quotation omitted). The Court thus dismissed Plaintiff's NYCHRL claim as well. *Id.* Finally, the Court granted Plaintiff leave to amend. *Id.*

### B. Additional Allegations in the SAC

Plaintiff has added additional allegations to the SAC that are relevant to whether DAL exerts "specific control" over the Restaurant. In the SAC, Plaintiff more pointedly alleges that DAL "is responsible for instituting a [point-of-sale] ("POS") System that does not accommodate deaf

individuals" at Subway restaurants, and has "failed to implement a readily available technology that would allow hearing impaired individuals to place orders" without the assistance of employees. SAC ¶ 34. In other words, Plaintiff alleges "that DAL exercises comprehensive operational control over all aspects of Subway POS Systems, including their interface with customers," *id.* ¶ 48, and thus chooses "the POS terminal itself." *Id.* ¶ 55. Plaintiff's SAC cites several articles regarding Subway's choice of POS systems over the years. *See id.* ¶ 49 ("The NCR RealPOS™ 70 product line will be sold to the SUBWAY chain's 24,000 worldwide franchisees exclusively through Subtotal PS Systems Ltd."); *id.* ¶ 51 (explaining Subway's custom designed POS system); *id.* ¶ 53 (article reporting that "[t]he Subway sandwich chain is implementing a new point of sale system across 30,000 outlets worldwide to increase efficiency . . . . We spent over 11 months evaluating over 25 vendors"); *id.* ¶ 54 ("SUBWAY restaurant chain has selected PAR as their supplier of in-store hardware point of sale (POS) terminals."). Plaintiff therefore alleges that, by choosing a system that allows interaction "only with employees and do[es] not allow customers to order for themselves[,]" *id.* ¶ 60, DAL prevented "Subway franchisees [from] reasonably accomodat[ing] disabled individuals through [s]elf-[o]rdering [t]erminals." *Id.* ¶ 61.

The SAC asserts the same five causes of action asserted in *Sullivan I*. Plaintiff first asserts a cause of action for violation of Title III of the ADA. *Id.* ¶¶ 76-92. Second, Plaintiff asserts two causes of action for violation of New York state law. *Id.* ¶¶ 93-118. Third, Plaintiff asserts a cause of action for violation of the NYCHRL. *Id.* ¶¶ 119-29. Finally, Plaintiff asserts a cause of action for declaratory relief. *Id.* ¶¶ 130-32. The SAC asserts claims for class-wide relief under Federal Rule of Civil Procedure 23(b)(2). *Id.* ¶¶ 62-75. On March 10, 2020, DAL moved to dismiss all claims asserted in the SAC against it. Dkt. Nos. 63-64. Plaintiff subsequently filed an opposition, Dkt. No. 65, and DAL filed its reply. Dkt. No. 66.

**II. LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this pleading standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

**III. DISCUSSION**

    **A. ADA Claim**

Plaintiff has not adequately alleged a claim against DAL for violation of the ADA. Even if Plaintiff had alleged that DAL "operates" its franchisees—and, as the Court further discusses below, he has not—the ADA does not require, as Plaintiff argues, that Subway restaurants use self-ordering

6

kiosks.  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *see also Camarillo*, 518 F.3d at 156 ("To state a claim under Title III, [a plaintiff] must allege [among other requirements] . . . that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." (citations omitted)).  Discrimination includes

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]

*Id.* § 12182(b)(2)(A)(ii).  In addition,

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

*Id.* § 12182(b)(2)(A)(iii).

The "auxiliary aid and services" requirement is flexible.  The term "auxiliary aids and services" includes "notetakers; . . . written materials; [and] exchange of written notes[.]" 28 C.F.R. § 36.303(b).  Moreover, "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Id.* § 36.303(c)(1)(ii).  Importantly, "the ultimate decision as to what measures to take [to ensure effective communication] rests with the public accommodation, provided that the method chosen results in effective communication." *Id.*  Furthermore,

> [a] public accommodation can choose among various alternatives so long as the result is effective communication.  For example, a restaurant would not be required

7

>  to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad.

*Id.* Pt. 36, App. C; *see also Dominguez v. Banana Republic, LLC*, No. 1:19-CV-10171-GHW, 2020 WL 1950496, at *10 (S.D.N.Y. Apr. 23, 2020) ("The Department of Justice's implementing regulations . . . emphasiz[e] that the ADA empowers retailers, not customers, to choose what auxiliary aid to offer[.]" (citations omitted).

This law is crystal clear that the ADA does not require DAL to force its franchisees to adopt a specific technological solution, so long as the franchisees can ensure that their employees can communicate effectively with hearing-impaired individuals. Plaintiff argues that the discrimination he allegedly suffered in this case was "the product of circumstances that *only* self-order kiosks can remedy." Opp. at 1 (emphasis added). Thus, Plaintiff argues that the ADA requires every Subway restaurant to install self-order kiosks. That is incorrect. As noted above, the ADA requires only effective accommodation of disabled individuals. Plaintiff could have, for example, communicated with Restaurant employees using pencil or pen and paper—a method of communication specifically contemplated by 28 C.F.R. § 36.303(b).[2] Plaintiff does not allege that he attempted to communicate with Restaurant employees in this or any alternative manner.

Because the ADA's requirements are flexible, other courts in this district have rejected the argument that the ADA requires restaurants to install specific pieces of technology. In *Dicarlo v. Walgreens Boot All., Inc.*, Judge Oetken noted that a store need not "use technology that allows" visually-impaired customer to "operate [beverage-ordering] machine independently" as long as store employees "effectively communicate with [the customer] such that he can enjoy the . . . machine."

---

[2] The Court also observes that the implications of accepting Plaintiff's argument are exceedingly broad. Plaintiff apparently asks the Court for an injunction ordering every Subway restaurant in the United States—of which there may be tens of thousands—to install self-ordering kiosks.

No. 15-CV-2919 (JPO), 2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2016); *see also West v. Moe's Franchisor, LLC*, No. 15-CV-2846 (WHP), 2015 WL 8484567, at *2-3 (S.D.N.Y. Dec. 9, 2015) (reaching the same conclusion); *cf. Camarillo*, 518 F.3d at 157 ("While restaurants are not necessarily required to have on hand large print menus that [plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who . . . are legally blind." (citation omitted)).  So too here:  DAL's franchisees are not required to implement self-ordering kiosks, so long as they ensure that disabled individuals are provided effective service.

Plaintiff's argument also fails for an independent reason:  He has failed to allege that DAL owns, leases, or operates the Restaurant.  To state a claim for violation of Title III of the ADA, a plaintiff must allege, among other requirements, that "defendants own, lease, or operate a place of public accommodation[.]"  *Camarillo*, 518 F.3d at 156 (citations omitted).  As in the FAC, Plaintiff does not allege in the SAC that DAL owns or has a leasehold interest in the Restaurant.  *See Sullivan I*, 2020 WL 353752, at *5 (holding that, because Plaintiff's FAC did not allege that DAL owned the Restaurant or that DAL leased the Restaurant to the franchisee, "the FAC [was] insufficient to support Title III liability on th[ose] ground[s]").  Thus, the only question is whether Plaintiff has sufficiently alleged that DAL "operates" the Restaurant under Title III.

He has not.  A franchisor must specifically control a franchisee's accessibility to the disabled to qualify as an "operator" under Title III.  As described by the Court in *Sullivan I*, "the relevant inquiry to determine whether a franchisor is an 'operator' under Title III is whether the franchisor specifically controls a franchisee's accessibility to the disabled."  *Id.* at *6 (quoting *Neff*, 58 F.3d at 1066) (quotation marks and brackets omitted).  Thus, allegations of general "supervisory authority, without more, [are] insufficient to support a holding that a franchisor operates" a franchisee.  *Id.* (quoting *Neff*, 58 F.3d at 1068-69) (quotation marks and brackets omitted).  Plaintiff's allegations center on DAL's requirements for its franchisees to adopt particular POS systems.  For example,

9

Plaintiff alleges that "DA[L] comprehensively dictates the specific POS System to be used at all Subway franchises[.]" SAC ¶ 50; *see also id.* ¶¶ 48-59.

The problem with Plaintiff's "POS system" allegations is that he has not adequately alleged that the ADA requires "operators" under the ADA to adopt specific POS technology, such as self-ordering kiosks. *If* it were true that the ADA required the installation of such technology, then Plaintiff's allegation that "DA[L] comprehensively dictates the specific POS System to be used at all Subway franchises," *id.* ¶ 50, might be sufficient to allege that DAL "specifically controls" its franchisees' "accessibility" to hearing-impaired individuals. *Sullivan I*, 2020 WL 353752, at *6. But as the Court noted above, the ADA contains no such requirement. And that is fatal to Plaintiff's claim for a violation of the ADA in this case. Although the self-ordering kiosks described by Plaintiff are one way that DAL's franchisees might accommodate hearing-impaired individuals, they are not the only way. So even if Plaintiff has plausibly alleged in the SAC that DAL has effectively forbidden its franchisees from employing self-ordering kiosks,[3] it does not follow that DAL specifically controls its franchisees' accessibility to the disabled.

To be sure, Plaintiff alleges that he was denied service because an employee did not communicate effectively with him during one visit to the Restaurant. But DAL is not responsible for that allegedly discriminatory interaction absent a sufficient allegation of specific control over the Restaurant. Because Plaintiff's allegations do not meet that standard, Plaintiff has not sufficiently alleged that DAL operates the Restaurant. In other words, because Plaintiff's only allegation in the SAC related to DAL's specific control of the Restaurant is that DAL failed to mandate that its franchisees install self-order kiosks, Plaintiff has failed to adequately allege that DAL operates the

---

[3] The Court notes that it is skeptical that DAL has, in fact, required its franchisees to use a specific POS system such that its franchisees are effectively forbidden from using self-ordering kiosks. Although it is axiomatic that the Court must accept as true the factual allegations contained in a complaint on a motion to dismiss, such allegations must be plausible. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (quotation omitted). The Court need not decide whether Plaintiff has plausibly alleged that DAL effectively forbids its franchisees from employing self-ordering kiosks because Plaintiff's claims fail for the other reasons discussed in this opinion.

Restaurant.[4]  Therefore, while the franchisee—DAL's co-defendant here—may ultimately be held liable for its employee's rude interaction with Plaintiff on these facts, DAL may not.

### B. New York State Law Claims

Plaintiff's New York state law claims are also dismissed.  In addition to his Title III claims, Plaintiff brings claims for violations of the New York State Human Rights Law and New York State Civil Rights Law.  "Where, as here, a plaintiff's 'State-law claim is coextensive with her Title III claim,'" the state law claim "rises or falls with the ADA claim."  *Sullivan I*, 2020 WL 353752, at *7 (first quoting *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) and then quoting *Dicarlo*, 2016 WL 482982, at *2) (brackets omitted).  Accordingly, because the Court has dismissed Plaintiff's ADA claim, it also dismisses Plaintiff's New York state law claims.

### C. NYCHRL Claim

Finally, Plaintiff's claim for violations of the NYCHRL are also dismissed.  Although NYCHRL claims had for many years "been treated as co-extensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), "rejected such equivalence" in favor of a broader remedial scope.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  The Restoration Act established two new rules of construction for the NYCHRL:  (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-

---

[4] The Court observes that this case is different from, say, a case involving allegations that a store is physically inaccessible to disabled patrons.  *Cf. Neff*, 58 F.3d at 1066.  In those cases, there is often only one entrance to the store.  Thus, the question of accessibility is often binary:  Either the entrance is accessible, or it is not.  In that circumstance, an allegation that a franchisor exerts specific control over the design of the entrance may be sufficient to allege that the franchisor is an "operator" under Title III.  Here, by contrast, there are many ways that a Subway restaurant could conceivably accommodate hearing-impaired individuals.  Thus, the allegation that DAL specifically controls one avenue through which a franchisee might potentially comply with the ADA is insufficient to allege specific control.

11

worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7; other quotation omitted)). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *Id.* (citation omitted). The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

In this case, "[t]hough there are differences between the statutes, such as the definition of disability, the Court has not found—and the parties have not identified—any relevant difference between the analysis required by the NYCHRL and the analysis required by the federal laws of the question at issue here." *Sullivan I*, 2020 WL 353752, at *8 (quoting *Dicarlo*, 2016 WL 482982, at *2). Consequently, Plaintiffs' NYCHRL claim is dismissed.

## IV. CONCLUSION

DAL's motion to dismiss is GRANTED. Although Plaintiff has already amended his complaint twice, the Court again grants Plaintiff leave to replead. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.") (citation omitted); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Moreover, the Court cannot conclude that any attempt by Plaintiff to replead would necessarily be futile. *Cf. Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile). However, Plaintiff should not expect any additional opportunities to amend his complaint. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003)

("[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough."(citations omitted)).  Any amended complaint must be filed no later than **fourteen days** from the date of this order.

SO ORDERED.

Dated:  May 8, 2020

_____
GREGORY H. WOODS
United States District Judge